IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **MAYRA SALDANA,** | ) | **CASE NO. 4:13CV3108** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| **RHONDA LAHM,** | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the Defendant's Motion to Dismiss for Failure to State a Claim (Filing No. 19) and the Plaintiff's Motion for Preliminary Injunction (Filing No. 17). For the reasons discussed below, the Motion to Dismiss will be granted in part, and the Motion for Preliminary Injunction will be denied.

**FACTS**

For purposes of the pending motions, all well-pled facts alleged in the Plaintiff's First Amended Complaint (Filing No. 16) are accepted as true, though the Court need not accept the Plaintiff's conclusions of law. The following is a summary of those factual allegations.

Plaintiff Mayra Saldana is a 24-year-old resident of Lincoln, Nebraska, who came to the United States from Mexico when she was two years old. On December 3, 2012, she was granted "deferred action" through a program implemented by the Secretary of Homeland Security, called Deferred Action for Childhood Arrivals ("DACA"). Deferred action is a long-standing form of prosecutorial discretion, through which immigration authorities make a discretionary determination not to remove an individual from the United States during a specified period.

After Saldana was granted deferred action, she was issued an employment authorization document ("EAD") and a Social Security Number. In January 2013, she attempted to apply for a Nebraska driver's license and was told by employees of Nebraska's Department of Motor Vehicles ("DMV") that she was ineligible. She tried twice more to obtain a driver's license, and each time she was denied. DMV processes drivers license applications submitted by other persons who have obtained deferred action status and EADs, but refuses to process applications of those who received deferred action status through the DACA program.

Defendant Rhonda Lahm is the Director of the DMV, and has the authority to adopt rules necessary to carry out DMV's responsibilities. Saldana has sued Lahm in her official capacity, seeking declaratory and injunctive relief. Saldana contends that the DMV policy denying her a driver's license violates the United States Constitution, specifically the Supremacy Clause (art. VI, cl. 2) and the Equal Protection Clause (amend. XIV, sec. 1).

Lahm has moved to dismiss Saldana's action under Fed. R. Civ. P. 12(b)(1), asserting sovereign immunity, and under Fed. R. Civ. P. 12(b)(6), asserting that Saldana does not have lawful status in the United States and therefore cannot state a claim upon which relief can be granted under either the Supremacy Clause or the Equal Protection Clause.

## STANDARDS OF REVIEW

### Fed. R. Civ. P. 12(b)(1)

A motion under Federal Rule of Civil Procedure 12(b)(1) challenges whether the Court has subject matter jurisdiction to hear the matter. The party asserting jurisdiction bears the burden of proving that jurisdiction is proper. *Great Rivers Habitat Alliance v. FEMA*, 615 F.3d 985, 988 (8th Cir. 2010). The Court, however, has "'wide discretion'" to

decide the process with which its jurisdiction can best be determined. *Johnson v. United States*, 534 F.3d 958, 964 (8th Cir. 2008) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)). It "has the authority to dismiss an action for lack of subject matter jurisdiction on any one of three separate bases: '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Id.* at 962 (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)); *see also Jessie v. Potter*, 516 F.3d 709, 712 (8th Cir. 2008) ("Motions to dismiss for lack of subject-matter jurisdiction can be decided in three ways: at the pleading stage, like a Rule 12(b)(6) motion; on undisputed facts, like a summary judgment motion; and on disputed facts").

**Fed. R. Civ. P. 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A]lthough a complaint need not include detailed factual allegations, 'a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 629-30 (8th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Instead, the complaint must set forth 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* at 630 (citing *Twombly*, 550 U.S. at 570).

"'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 716 (8th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). "'Courts must accept . . . specific factual allegations as true but are not required to accept . . . legal conclusions.'" *Outdoor Cent.,*

*Inc. v. GreatLodge.com, Inc.,* 643 F.3d 1115, 1120 (8th Cir. 2011) (quoting *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010)). "A pleading that merely pleads 'labels and conclusions,' or a 'formulaic recitation' of the elements of a cause of action, or 'naked assertions' devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). The complaint's factual allegations must be "sufficient 'to raise a right to relief above the speculative level.'" *Williams v. Hobbs,* 658 F.3d 842, 848 (8th Cir. 2011) (quoting *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009)).

When ruling on a defendant's motion to dismiss, a judge must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555 & 556 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). The complaint, however, must still "include sufficient factual allegations to provide the grounds on which the claim rests." *Drobnak v. Andersen Corp.,* 561 F.3d 778, 783 (8th Cir. 2009).

"Two working principles underlie . . . *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679 (citing *Twombly,* 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

**Preliminary Injunctive Relief**

When considering a motion for preliminary injunctive relief, a district court should weigh "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys, Inc. v. C.L. Sys Inc.*, 640 F.2d 109, 114 (8th Cir.1981) (*en banc*). A preliminary injunction is considered an extraordinary remedy, and the burden of proving each of the *Dataphase* factors lies with the party seeking the injunction. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

## DISCUSSION

### I.  Sovereign Immunity

The Defendant argues that Saldana's action should be dismissed under Fed. R. Civ. P. 12(b)(1), because Saldana, in essence, is asking the Court to order Lahm to comply with a Nebraska state statute: Neb. Rev. Stat. § 60-484.05 (2012 Cum. Supp.). The Defendant notes that federal courts lack subject matter jurisdiction to direct state officials to conform their conduct to state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."). The Defendant asserts that the state of Nebraska has not waived its sovereign immunity from suits challenging the denial of state driver's licenses, except to the extent Neb. Rev. Stat. § 60-4,105(1) (Reissue 2010) permits an aggrieved party to bring such action in *state* district court, which Saldana has not done.

In her First Amended Complaint, Saldana claims that Lahm is following state law (Neb. Rev. Stat. § 60-484.05(1) (Cum. Supp. 2012)) with respect to persons having non-DACA deferred-action status, but not with respect to those having DACA deferred-action

status.  (First Amended Complaint, ¶¶ 15-17.)  Saldana is not asking this Court to direct Lahm to follow state law, nor is Saldana asserting any claim based on a violation of due process.  Instead Saldana asserts that Lahm's policy and practice violates the Supremacy Clause and the Equal Protection Clause of the United States Constitution.  The fact that Saldana could have pursued a state-law claim, over which this Court might lack jurisdiction, does not prevent her from pursuing other claims over which this Court does have subject matter jurisdiction.

The Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) will be denied, and this Court will address only Saldana's Supremacy Clause and Equal Protection Clause claims, and not any arguments that Lahm has failed to follow Nebraska statutes.

## II.  Failure to State a Claim upon which Relief Can be Granted

### A.  *Supremacy Clause*

#### *I.  Legal Framework*

"[T]he Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that 'interfere with, or are contrary to,' federal law." *Hillsborough Cnty, Fla. v. Automated Med. Labs., Inc.,* 471 U.S. 707, 712 (1985) (quoting *Gibons v. Ogden*, 22 U.S. 1, 211(1824)). Congress may pre-empt state law in express terms, or where the scheme of federal regulation is so comprehensive that is reasonably implies Congress "left no room" for supplementary state regulation.  *Id.* at 713.  "Pre-emption of a whole field also will be inferred where the field is one in which 'the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *Id.* State laws are also void if they actually conflict with federal law. *Id.* "Such a conflict arises when 'compliance with both federal and state regulations is a physical impossibility,' or when state law 'stands as an obstacle to the accomplishment and execution of the full

purposes and objectives of Congress[.]'" *Id*. at 713 (quoting *Florida Lime & Avacado Growers, Inc. V. Paul*, 373 U.S. 132 (1963)).

Courts begin with a presumption *against* preemption. When Congress legislates "in a field which the States have traditionally occupied . . . . we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *United States v. Locke*, 529 U.S. 89, 108 (2000) (internal quotation marks omitted) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230 (1947)). Nor should pre-emption be assumed "when the State regulates in an area where there has been a history of significant federal presence." *Id.* at 90.

With respect to the "field" of immigration, the Supreme Court has held that the Constitution of its own force requires pre-emption of any state efforts to regulate immigration, but not "every state enactment which in any way deals with aliens is a regulation of immigration and thus per se pre-empted by this constitutional power." *DeCanas v. Bica*, 424 U.S. 351, 355 (1976) (upholding California law prohibiting employers from knowingly employing aliens not entitled to lawful residence in the United States). A state law regulates immigration and is pre-empted under the Constitution only if the state law is "essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain." *Id.*

With respect to conflict pre-emption, there must be an actual conflict between the state law or ordinance and the federal Constitution or statute in order for pre-emption to apply. A hypothetical or potential conflict will not support a finding of pre-emption. *English v. General Elec. Co.*, 496 U.S. 72, 89 (1990).

<u>ii.  Application to Facts</u>

Here, Saldana does not challenge Nebraska's statutes, but Lahm's policy or practice of denying Saldana a driver's license based on Saldana's DACA deferred-action status.  Saldana suggests that Lahm's actions, taken under color of state law, conflict with the Real ID Act of 2005 (the "Act"), 49 U.S.C. § 30301, note, Sec. 202(c)(2)(B)(viii) and (C)(ii), incorporated into 6 C.F.R. § 37.3.

The Act sets ***minimum*** standards that states must meet in the issuance of driver's licenses and identification cards in order for the licenses or cards to be accepted for official purposes of the federal government, such as boarding federally regulated commercial aircraft and accessing federal facilities.  The Act prescribes ***minimum*** content requirements for the licenses or cards, including specific information and security features.  The Act also  prescribes ***minimum*** issuance standards:

> **(c) Minimum issuance standards.–**
>
> **(1) In general**.**–** To meet the requirements of this section [this note], a State shall require, at a minimum, presentation and verification of the following information before issuing a driver's license or identification card to a person:
>> **(A)** A photo identity document, except that a non-photo identity document is acceptable if it includes both the persons's full legal name and date of birth.
>> **(B)** Documentation showing the person's date of birth.
>> **(C)** Proof of the person's social security number or verification that the person is not eligible for a social security account number.
>> **(D)** Documentation showing the person's name and address of principal residence.
>
> **(2) Special requirements.–**
>> **(A) In general.–** To meet the requirements of this section [this note], a State shall comply with the minimum standard of this paragraph.
>> **(B) Evidence of lawful status.–**A State shall require, before issuing a driver's license of identification card to a person, valid documentary evidence that the person–
>>> **(I)** is a citizen or national of the United States;

> **(ii)** is an alien lawfully admitted for permanent or temporary residence in the United States;
> **(iii)** has conditional permanent resident status in the United States;
> **(iv)** has an approved application for asylum in the United States or has entered into the United States in refugee status;
> **(v)** has a valid, unexpired nonimmigrant visa or nonimmigrant visa status for entry into the United States;
> **(vii)** has a pending or approved application for temporary protected status in the United States;
> **(viii)** has approved deferred action status; or
> **(ix)** has a pending application for adjustment of status to that of an alien lawfully admitted for permanent residence in the United States or conditional permanent resident status in the United States.
>
> **(C) Temporary drivers' licenses and identification cards.–**
>> **(I) In general.–** If a person presents evidence under any of clauses (v) through (ix) of subparagraph (B), the State may only issue a temporary driver's license or temporary identification card to the person.
>> **(ii) Expiration date.–**A temporary driver's license or temporary identification card issued pursuant to this subparagraph shall be valid only during the period of time of the applicant's authorized stay in the United States or, if there is no definite end to the period of authorized stay, a period of one year.
>> **(iii) Display of expiration date. –** A temporary driver's license or temporary identification card issued pursuant to this subparagraph shall clearly indicate that it is temporary and shall state the date on which it expires.
>> **(iv) Renewal.–** A temporary driver's license or temporary identification card issued pursuant to this subparagraph may be renewed only upon presentation of valid documentary evidence that the status by which the applicant qualified for the temporary driver's license or temporary identification card has been extended by the Secretary of Homeland Security.

49 U.S.C. § 30301, note, Sec. 202(c)(1) and (2) (bracketed material in original).

The Defendant asserts that Saldana does not have "lawful status" in the United States, though she may have "lawful presence." Saldana agrees that she lacks "lawful status" for purposes of federal immigration laws, but asserts that she has "lawful status" for purposes of the Act. This Court finds it unnecessary to determine whether Saldana has "lawful status" for purposes of the Act, because nothing in the Act requires states to issue

driver's licenses to anyone. The Act simply sets minimum standards for the issuance of state driver's licenses and state identification cards, if such licenses and cards are to be accepted for federal use. Nothing in the Act prevents states from imposing standards or requirements that exceed those set out in the Act.

### B. Equal Protection

#### I. Legal Framework

"The Equal Protection Clause directs that 'all persons similarly circumstanced shall be treated alike.'" *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (quoting *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920)). "But so, too '[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same'" *Id.* at 216 (quoting *Tigner v. Texas*, 310 U.S. 141, 147 (1940)).

> The initial discretion to determine what is "different" and what is "the same" resides in the legislatures of the States. A legislature must have substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill. In applying the Equal Protection Clause to most forms of state action, we thus seek only the assurance that the classification at issue bears some fair relationship to a legitimate public purpose.

*Id.*

In *Plyler,* the Supreme Court held that, under the Equal Protection Clause, states may not deny children access to public education based on their undocumented immigration status. The Supreme Court concluded that children of illegal aliens were similarly situated with other children for purposes of public education, noting specifically that the alien children lacked any responsibility for, or control over, their unlawful status. *Id*. at 219-20. The Court then rejected the arguments presented by the state of Texas in support of the legislation, concluding that the denial of public education to children of illegal aliens was not fiscally advantageous nor an effective deterrent to illegal immigration.

*Id*. at 228-30. The Court distinguished its earlier decision in *DeCanas v. Bica*, 424 U.S. 351 (1976), in which it held that states *may* prohibit the *employment* of illegal aliens.

The *Plyler* Court observed that illegal aliens are not a suspect class, and a state need not demonstrate that the treatment of illegal aliens in a manner different from other persons is precisely tailored to serve a compelling governmental interest. *Plyler*, 457 U.S. at 219 n.19, and 223. ("Of course, undocumented status is not irrelevant to any proper legislative goal." *Id.* at 220. "[T]hose who elect to enter our territory by stealth and in violation of our law should be prepared to bear the consequences, including, but not limited to, deportation." (*Id.*).)

### ii.  *Application to Facts*

Here, Saldana alleges that Lahm issues driver's licenses to other persons with deferred-action status and EADs, but not to those with DACA-related deferred action status and EADs. If her allegation is true, it is not clear what, if any, rational basis supports this different treatment, and the Defendant will be required to answer Saldana's First Amended Complaint as it relates to her Second Claim for Relief, based on the Equal Protection Clause.

## III.  Preliminary Injunctive Relief

As noted above, a preliminary injunction is an extraordinary remedy, and the burden of proving each of the four *Dataphase* factors lies with the party seeking the injunction. Here, Saldana has presented evidence and argument that she and her family suffer significant inconvenience by virtue of her inability to drive a car. She suggests that such inconvenience outweighs any harm the Defendant or the public would incur if she were granted a driver's license.

The Court is not persuaded that any harm suffered by Saldana or her family by virtue of her inability to drive a car pending the resolution of this litigation is "irreparable harm," as contemplated in the first *Dataphase* factor. (640 F.2d at 114.) Any harm Saldana and her family are suffering due to her lack of a driver's license may well be reparable through Neb. Rev. Stat. § 60-4,105(1) (Reissue 2010), which permits an aggrieved party to bring an action challenging the denial of a driver's license in state district court. Saldana has chosen, instead, to bring her action in federal court, asserting a deprivation of rights under the United States Constitution.[1]

While it might appear to inflict little harm on the Defendant or the public if this Court were to order the Defendant to issue a driver's license to Saldana (the second and fourth *Dataphase* factors), the very act of federal interference in the domain of state government, without strong legal justification, is an intrusive harm. Finally, it is not apparent that Saldana has a likelihood of success on the merits of her remaining claim–the third *Dataphase* factor.

For these reasons, and because a denial of her Motion for Preliminary Injunctive Relief will maintain the status quo, the Court will deny Saldana's Motion for Preliminary Injunctive Relief.

---

[1] *Amici* argue that a mere allegation of a deprivation of Saldana's constitutional rights equates to irreparable harm under the first *Dataphase* factor. (Filing No. 27, p. 21.) (citing *Saint v. Nebraska Sch. Activities Ass'n*, 684 F. Supp. 626, 628 (D. Neb. 1988)). However, the Eighth Circuit has stated that a "showing that [an] ordinance interfered with the exercise of . . . constitutional rights," not a mere allegation, "supports a finding of irreparable injury." *Planned Parenthood of Minnesota, Inc. v. Citizens for Cmty. Action,* 558 F.2d 861, 867 (8th Cir. 1977). At this juncture, Saldana has merely alleged a constitutional deprivation. She has not shown that she has been denied a constitutional right, nor has she demonstrated a likelihood that she can make such a showing.

Accordingly,

IT IS ORDERED:

1. Defendant Rhonda Lahm's Motion to Dismiss (Filing No. 19) is granted in part, as follows:

> Plaintiff Mayra Saldana's First Claim for Relief (Supremacy Clause) in her First Amended Complaint (Filing No. 16) is dismissed;

2. Plaintiff Mayra Saldana's Motion for Preliminary Injunction (Filing No. 17) is denied; and

3. The Defendant will respond to the remainder of the First Amended Complaint on or before October 25, 2013.

.

DATED this 11th day of October, 2013.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge